UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No. 18cr10286 |
| | ) | |
| | ) | **VIOLATIONS:** |
| v. | ) | |
| | ) | Embezzlement from an Agency |
| | ) | Receiving Federal Funds |
| **KEVIN SWEENEY,** | ) | (18 U.S.C. § 666(a)(1)(A)) |
| | ) | |
| **Defendant.** | ) | Wire Fraud |
| | ) | (18 U.S.C. § 1343) |
| | ) | |
| | ) | Aiding and Abetting |
| | ) | (18 U.S.C. § 2) |
| | ) | |
| | | Forfeiture Allegation |
| | | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

## INFORMATION

The United States Attorney charges that:

### General Allegations

At all times relevant to this Information:

1. Troop E was an operational division of the Massachusetts State Police ("MSP"), the law enforcement agency for the Commonwealth of Massachusetts. Among other duties, Troop E was primarily responsible for enforcing criminal law and traffic regulations on Interstate-90, the Massachusetts Turnpike ("I-90"), which spans the Massachusetts/New York border to the Boston Harbor. Troop E headquarters was located in South Boston, and additional Troopers within Troop E were stationed at four barracks located in Weston, Charlton, Westfield, and near the Boston Tunnels.

1

2. In addition to their salary for a regular 8-hour work shift, Troopers within Troop E were able to earn overtime pay equivalent to 1.5 times their regular hourly pay rate for various overtime assignments. Beginning by at least January 2015, Troop E Troopers could earn overtime pay by signing up for and working selective enforcement initiatives known as "AIRE" (Accident and Injury Reduction Effort) and "X-Team." The objective of the AIRE and X-Team programs was to reduce accidents, crashes, and injuries on I-90 through an enhanced presence of MSP Troopers patrolling I-90 and targeting vehicles traveling at excessive speeds.

3. All AIRE shifts were four hours long and were organized by letter according to a specific shift: A-AIRE from 7:30 a.m. to 11:30 a.m.; B-AIRE from 11:00 a.m. to 3:00 p.m.; C-AIRE from 3:30 p.m. to 7:30 p.m.; and D-AIRE for 7:00 p.m. to 11:00 p.m. Prior to each AIRE shift, Troopers were deployed to a particular sector of I-90.

4. "X-Team" shifts were generally comprised of two troopers working eight hour overtime shifts.

5. To earn AIRE and "X-Team" overtime pay, Troopers were required to work the duration of the 4-hour AIRE shift, or 8-hour "X-Team" shift, and conduct traffic enforcement on I-90 by issuing summonses, citations, and warnings during the shift. In the event that inclement weather rendered Turnpike traffic stops unsafe during an AIRE or "X-Team" shift, Troopers were to contact the Troop E desk officer in order to be re-deployed to another sector of I-90, as necessary.

6. As part of the AIRE and "X-Team" overtime shift duties, Troopers were required to truthfully and accurately report, among other things, the date and time of the shift worked, the sector of deployment, and the traffic citations issued during the AIRE shift.

7. KEVIN SWEENEY ("SWEENEY") was an MSP Trooper assigned to Troop E. In or about 2016, SWEENEY's total MSP compensation was approximately $218,512, which included approximately $95,895 in overtime pay, a portion of which included pay for AIRE and "X-Team" overtime shifts. In or about 2015, SWEENEY's total MSP compensation was approximately $249,407, which included approximately $111,808 in overtime pay, a portion of which included pay for AIRE and "X-Team" overtime shifts.

8. As an MSP Trooper in Troop E, SWEENEY regularly received Troop E memorandums, policies, and protocols that instructed Troop E personnel as to AIRE and "X-Team" assignment requirements, including the 4-hour AIRE shift duration requirement, the 8-hour "X-team" duration requirement, and paperwork reporting responsibilities.

### The MSP Received Federal Funds

9. The United States Department of Transportation ("DOT") was an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities that enforce traffic regulations on public roadways, including the MSP.

10. For each of the calendar years 2015 and 2016, the MSP received annual benefits from the DOT in excess of $10,000. DOT provided these funds through numerous federal grants.

### The Defendant's Fraud Scheme

11. In or about 2015, SWEENEY signed up for and received overtime pay for more than 230 AIRE overtime shifts. In or about 2016, SWEENEY signed up for and received overtime pay for more than 131 AIRE overtime shifts. On a regular basis during this period, SWEENEY purposefully departed his AIRE overtime shift from one to three hours early and thus did not work the entire 4-hour shift and/or purposefully departed his "X-Team" overtime

3

shifts from one to seven hours early. On several occasions, SWEENEY signed up for and received AIRE and/or "X-Team" overtime pay without showing up to work for the given AIRE and/or "X-Team" shift at all.

12. In order to conceal the fraud, SWEENEY fabricated and submitted fraudulent traffic citations to create the appearance that he had (i) worked a 4-hour AIRE shift and/or 8-hour "X-Team" shift; and (ii) made traffic stops and issued traffic citations during a given AIRE and/or "X-Team" overtime shift, when, in fact, he had not. SWEENEY also made numerous false statements to the MSP on internal MSP paperwork representing to MSP that SWEENEY had worked AIRE and "X-Team" overtime hours that he had not. SWEENEY made additional false statements in the MSP payroll system, representing to the MSP that SWEENEY had worked AIRE and "X-Team" overtime hours that he had not.

13. In addition to AIRE and "X-Team" overtime, SWEENEY abused other Troop E overtime programs, which had work-hour and reporting requirements similar to AIRE. In these instances, SWEENEY left early or did not show up for these overtime shifts but would submit paperwork claiming to have worked the entire shift.

14. From at least as early as in or about 2015 through in or about 2016, during a continuous twelve-month period therein, SWEENEY caused the MSP to pay in excess of $5,000 in AIRE, "X-Team," and other overtime pay to SWEENEY for AIRE, "X-Team," and other overtime hours that SWEENEY did not actually work.

15. By way of specific example, on or about December 14, 2016, SWEENEY submitted paperwork to MSP and made payroll system entries in which he claimed to have worked a "D AIRE" overtime shift from 7:00 p.m. to 11:00 p.m. on December 14, 2016.

4

SWEENEY further claimed to have written eight citations from 7:00 p.m. through 7:50 p.m. on December 14, 2016, and, submitted copies of those citations to MSP as evidence that he worked the overtime shift.

16. SWEENEY's cruiser radio data indicates that his cruiser radio was not turned on during the December 14, 2016 overtime shift. In addition, SWEENEY did not run any driver histories during the overtime shift, and RMV records reflect that none of the motorists that SWEENEY claims to have cited during the overtime shift actually received a citation that day.

17. As a result of SWEENEY's false statements concerning his assigned AIRE shift on December 14, 2016, including fictitious and false citations, false Paystation entries, and false AIRE paperwork, SWEENEY was paid for the December 14, 2016 D-AIRE overtime shift.

18. Based upon those false and fraudulent representations, a wire of $4,444.84 was sent from the Commonwealth to SWEENEY's Citizen's Bank account on or about December 30, 2016.

19. That wire included payment for the overtime hours SWEENEY claimed but did not work on December 14, 2016.

## COUNT ONE
(Embezzlement from an Agency Receiving Federal Funds –
18 .S.C. §§ 666(a)(1)(A)); Aiding and Abetting – 18 U.S.C. § 2)

20. Paragraphs 1 through 19 of this Information are incorporated by reference herein.

21. From at least in or about January 2015 to in or about December 2016, in the District of Massachusetts,

**KEVIN SWEENEY**

defendant herein, being an agent of an organization, namely, the MSP, embezzled, stole, obtained by fraud and otherwise without authority knowingly converted to the use of a person other than the rightful owner and intentionally misapplied, property valued at $5,000 and more that was owned by, and was under the care, custody, and control of the MSP, an organization that received in excess of $10,000 in federal program benefits, funded by DOT, in any one-year period between in or about January 2015 and in or about December 2016.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNT TWO
(Wire Fraud – 18 U.S.C. § 1343; Aiding and Abetting – 18 U.S.C. § 2)

22. Paragraphs 1 through 19 of this Information are incorporated by reference herein.

23. On or about the dates set forth below, in the District of Massachusetts and elsewhere,

**KEVIN SWEENEY**

defendant herein, having devised and intending to devise a scheme and artifice to defraud the Massachusetts State Police, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, as set forth below:

| **DATE (on or about)** | **WIRE TRANSMISSION** |
|---|---|
| December 30, 2016 | A direct deposit of $4,444.86 from the Commonwealth of Massachusetts, via Santander Bank and its servers in Mexico, to SWEENEY's Citizens Bank Account xxxxxx4287, which transfer traveled in interstate and foreign commerce. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

1. Upon conviction of the offense charged in Counts One or Two of this Information, the defendant,

**KEVIN SWEENEY**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense.

2. If any of the property described in paragraph 1 hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant --

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred to, sold to, or deposited with a third party;

  c. has been placed beyond the jurisdiction of this Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

                                          Respectfully submitted,

                                          ANDREW E. LELLING
                                          UNITED STATES ATTORNEY

By:       */s/ Mark Grady*
                                          Dustin Chao
                                          Mark Grady
                                          Neil Gallagher
                                          Assistant U.S. Attorneys